David J. McGlothlin, Esq. (SBN: 026059)
david@southwestlitigation.com
**Hyde & Swigart**
One East Camelback Road, Suite 300
Phoenix, AZ 85012
Telephone:   (602) 265-3332
Facsimile:   (602) 230-4482

Attorneys for the Plaintiff
Benjamin Cooke and Mary Cooke

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Cooke and Mary Cooke<br><br>                        Plaintiff,<br><br>v.<br><br>Gurstel Staloch & Chargo PA<br><br>                        Defendant. | **Case No.: CV 09-580-PHX-NVW**<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR REASONABLE ATTORNEY FEES AND COSTS** |

1
## I. INTRODUCTION AND RELIEF REQUESTED

2    As a result of Plaintiffs' successful action under the Fair Debt Collection

3    Practices Act ("FDCPA"), Plaintiffs are entitled to their reasonable attorney's fees

4    and costs pursuant to 15 U.S.C. § 1692k(a)(3) and the acceptance of Defendant's

5    Fed.R.Civ.P. 68 Offer of Judgment. Based on the hours reasonably expended and

6    after a reduction for reasonable billing discretion, Plaintiffs' counsel requests fees in

7    the amount of $7,920.00 and costs in the amount of $438.44, totaling $8,358.44.

8    The Parties have attempted to resolve the issue of the amount to be paid, but

9    have been unsuccessful in reaching a compromise.

10
## II. STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

11    Plaintiffs filed this action against Defendant for numerous violations of the

12    FDCPA.

13    On or about March 3, 2008, Defendant served on Plaintiffs a summons and

14    complaint filed in the Estrella Justice Court, case number CC2008-045922rc. On

15    March 6, 2008, Plaintiff called Defendant and agreed to a settlement for the Justice

16    Court lawsuit. The agreed upon settlement consisted of a total of $778.46. This was

17    to be paid in two payments. At this time, Plaintiff gave Defendant permission to

18    withdrawal two payments from his checking account. The first payment of $500.00

19    identified with check number 5010, and a second payment of $278.46 identified

20    with check number 5011. *See* Complaint Para. 19-23.

21    On March 13, 2008, Defendants made the first withdrawal of $500.00 check

22    number 5010. On or about March 25, 2008, Defendant sent Plaintiff a letter stating

23    they were going to withdrawal the second check in the amount of $278.46

24    identified with check number 5011. On or about March 27, 2008, Defendants made

25    an unauthorized withdrawal from Plaintiffs' account in the amount $500 identified

26    with an out of sequence check number, 9000. *Id* at Para. 19-23.

27    On or about March 27, 2008, Plaintiff called Defendant and spoke to

28    Defendant's agent Steven Anderson. During this conversation Mr. Anderson

HYDE & SWIGART
Phoenix, Arizona

admitted that Defendant "screwed up", and informed Plaintiff that he had a second account with Defendant. He then proceeded to try to convince Plaintiff that this unauthorized $500 withdrawal should go to Plaintiffs' second account with Defendant. When Plaintiff repeatedly requested a refund of the unauthorized withdrawal, Defendant stated that Plaintiff had to "go to the Tempe office for them to cut him a check" to reimburse him. *Id* at Para. 30, 36.

On or about April 1, 2008, Plaintiffs drove across town to Defendant's Tempe office to request a refund. At this time, Plaintiff's were required to discuss their account with Defendant's agent Jessica Laginess. During this conversation, Ms. Laginess informed Plaintiffs that the Tempe office could not issue checks to Plaintiff. Plaintiffs feeling abused and lied to repeatedly asked for the unauthorized withdrawal to be returned. During this same conversation, Defendant again tried to settle Plaintiff's second account by keeping the unauthorized withdrawal.

Aware that Plaintiff's believed the total amount withdrawn from their account were the two withdrawals of $500 for a total of $1000, Defendant convinced Plaintiff to allow Defendant to keep the unauthorized withdrawal and for Plaintiff to pay Defendant an additional $100 to settle Plaintiffs' original lawsuit as well as the alleged second account in Defendant's possession. *Id* at Para. 39-46.

A few days later, Plaintiff's realized that Defendants still withdrew check number 5011 for the amount of $278.46. This withdrawal was not part of the re-negotiated settlement that Plaintiffs agreed upon with Defendant. On or about April 8, 2008, Plaintiffs again returned to Defendant's Tempe office. During this visit they were instructed to speak to Mr. Jeno Berta. *Id* at Para. 47-49.

No longer trusting Defendants, Plaintiffs recorded this conversation. During this conversation, Mr. Berta asked several times if Plaintiffs were happy with the settlement of the lawsuit in the amount of $778.46. Each time, Plaintiffs responded that they were indeed happy with that settlement, however they just wanted their funds returned from the unauthorized withdrawal allegedly related to the second

account. Defendant's agent Jeno Berta was then recorded stating that since Plaintiff was unhappy with the re-negotiated settlement of the second account, that Defendant were now rescinding all agreements with Plaintiff and Defendants would not honor the agreed upon settlement for the first account for the lawsuit in Justice Court. Despite being frustrated and abused Plaintiffs still requested that all unauthorized funds be returned. *Id* at Para. 47-51.

After this conversation, Plaintiffs were informed they would receive a reimbursement of all funds withdrawn from their account. Plaintiffs were informed a deposit would be made into the account in the amount of $1,483.46 on April 11, 2008. This deposit was not made. Plaintiff then made a complaint with the State Bar of Arizona. After further communications with the State Bar and Mr. Berta, Plaintiffs finally received a *check* for the $1,483.46. *Id* at Para. 57, 58, & 64.

Plaintiffs were then forced to litigate the case in Justice Court. Defendants eventually prevailed and were awarded a judgment. Defendants then obtained a writ of garnishment and garnished Plaintiffs for the full amount of the Justice Court judgment. *Id* at Para. 65-66.

Plaintiffs alleged the foregoing acts and omissions constitute numerous and multiple violations of the FDCPA, 15 U.S.C. § 1692 et seq. including but not limited to making statements that were a false, deceptive, or misleading representation or means in connection with the collection of a debt violating 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10); as well as using an unfair or unconscionable means to collect or attempt to collect any debt violating 15 U.S.C. § 1692f.

Plaintiffs' complaint was filed on March 24, 2009. Defendant then filed an Answer on April 24, 2009. On April 27, 2009 this Court issued an order setting a scheduling conference and requiring all parties to draft a joint discovery plan, complete initial disclosures, and to propound written discovery.

HYDE & SWIGART
Phoenix, Arizona

1   Pursuant to the Court order, on or about May 7, 2009, Plaintiffs' counsel

2   drafted the joint discovery plan, initial disclosures and propounded Plaintiffs first

3   set of discovery requests. Two weeks after serving the foregoing documents, on or

4   about May 22, 2009, Defendant served Plaintiffs with a Rule 68 Offer of Judgment.

5   On or about May 29, 2009, Plaintiffs advised Defendants that they had accepted

6   Defendants Offer.

7   Defendant then requested we try to resolve the issue of attorneys' fees before

8   Plaintiffs entered judgment. Despite several phone calls and several emails, the

9   parties were unable to reach an agreement on fees. Therefore, to protect Plaintiffs'

10  rights and following proper procedure to alert the Court of the acceptance of the

11  offer, on June 19, 2009, Plaintiffs filed Notice of Acceptance of Defendant's Offer

12  of Judgment.

### III. ARGUMENT

**A. PREVAILING PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEY'S FEES UNDER BOTH THE FDCPA AND THIS COURT'S ORDER AND JUDGMENT.**

17  The "FDCPA" provides that reasonable attorney fees and costs shall be

18  awarded to a prevailing plaintiff.  15 U.S.C. § 1692k provides, in relevant part:

> "(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of -
> …
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

27  Moreover, on June 22, 2009, this Court ordered that, "That Judgment be

28  taken against Defendant, Gurstel Staloch & Chargo PA in the amount of $2,002

1 plus Plaintiff's reasonable attorneys' fees and costs incurred by Plaintiff's counsel

2 in connection with this matter. If an amount of attorneys' fees and costs cannot be

3 reached between the parties, Plaintiff's counsel will petition the Court, subject to

4 allowing Defendant an opportunity to respond."

5 It is undisputed that Plaintiffs' counsel is to be paid the reasonable attorney's

6 fees and costs for this action; the question here is to decide what amount is

7 "reasonable."

## B. FEES IN THE FULL LODESTAR AMOUNT SHOULD BE AWARDED

### 1. Plaintiff's Attorneys Are to be Awarded Fees Pursuant to the Lodestar Formula

11 The U.S. Supreme Court has explained the lodestar is the starting point for

12 any calculation of an award of attorney's fees:

> The most useful starting point for determining the amount of a
> reasonable fee is the number of hours reasonably expended on
> the litigation multiplied by a reasonable hourly rate.   The
> calculation provides an objective basis on which to make an
> initial estimate of the value of a lawyer's services.

17 *Hensley v. Eckerhart*, 461 U.S. 424, 433; 103 S. Ct. 1933, 1939; 76 L.Ed. 2d

18 40 (1983). *See also Thorpe v. Collection Information Bureau, Inc.*, 963 F. Supp.

19 1172, 1174 (1996).  The multiplication of the reasonable number of hours expended

20 times the reasonable hourly rate is referred to as the "lodestar." *Friend v.*

21 *Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995).   Although this decision, and

22 many others cited hereinafter, arises in the context of the Civil Rights Attorney's

23 Fees Award Act, 42 U.S.C. §1988, its criteria are equally applicable here.   "The

24 standards set forth in this opinion are generally applicable in all cases in which

25 Congress has authorized an award of fees to a prevailing party." *Id.*, 103 S. Ct. at

26 1939, n.7.  "We have stated in the past that fee-shifting statutes similar language is

27 'a strong indication' that they are to be interpreted alike." *Independent Federation*

28 *of Flight Attendants v. Zipes*, 491 U.S. 754; 109 S. Ct. 2732, 2735 n.2; 105 L. Ed.

2d 639 (1989) (quoting *Northcross v. Memphis Bd. of Education*, 412 U.S. 427, 428; 93 S. Ct. 2201, 2202; 37 L. Ed. 2d 48 (1973).

### 2. Plaintiff's Counsel Are Seeking Fees Based Upon Market Rates.

The U.S. Supreme Court has stated: "The statute and legislative history establish that 'reasonable fees' under section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum v. Stenson*, *supra*, 465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984)(footnote omitted). Paying counsel market rates is the only way of making certain counsel will litigate these cases:

> In order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases . . .. Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies the law.

*Tolentino v. Friedman*, *supra*, 46 F.3d 645, 652-653 (7th Cir. 1995).

In a thirteen year old decision the 9th Circuit stated it often costs more that $6,000 to hire an attorney to draft a complaint." *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. Guam 1996)("Acknowledging that it often costs more than $6000 to hire an attorney to draft a complaint...")

A fee award should permit counsel "to earn an income that would be competitive with colleagues who get paid win or lose." *Bayless v. Irv Leopold Imports, Inc.*, 659 F. Supp. 942 (D. Ore. 1987).

In *Welch v. Metropolitan Life Insurance Company*, 480 F.3d 942, 946 (9th Cir. 2007), the Ninth Circuit recently reversed the trial court's denial of the prevailing plaintiff's requested hourly rates of $375 and $400 for her attorneys, stating that the measure of compensation in these cases should be based upon what comparable counsel charge their clients for similar work:

HYDE & SWIGART
Phoenix, Arizona

HYDE & SWIGART
Phoenix, Arizona

> We have repeatedly held that the determination of a reasonable hourly rate is not made by reference to the rates actually charged the prevailing party. Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of the prevailing counsel charge their paying clients for legal work of similar complexity.

*Welch, supra,* 480 F.3d at 946.

The Court explained its finding that the plaintiff had met her burden by showing the hourly rate requested has in fact been awarded by other courts and by submitting declarations of the reasonableness of those requested rates:

> Welch satisfactorily bore her burden of demonstrating that $375 to $400 per hour is in line with the prevailing market rate by submitting two pieces of evidence: (1) rate determinations in other cases litigated by the [prevailing plaintiff's] firm awarding fees at rates between $300 and $375 per hour; and (2) declarations from comparable ERISA lawyers attesting that the market sustains a rate above $400 per hour.

*Welch*, *supra*, 480 F.3d at 947, citing *United Steelworkers of Am. V. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990) (affidavits of the plaintiff's attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the prevailing market rate.)

**3. The Hyde & Swigart Hourly Rate is Reasonable.**

Hyde & Swigart's practice is almost exclusively devoted to the litigation of Federal Fair Debt Collection Practices Act matters. The firm has litigated over 600 cases in the past six years.   Hyde & Swigart has three offices in two states, California and Arizona and also practices in Minnesota. To date the firm is responsible for over twelve published decisions. On all FDCPA cases Hyde & Swigart represents consumers on a contingency fee, funding all litigation costs, and usually waiting a considerable amount of time before being paid for services. *See* Swigart Decl., para. 5&6.

HYDE & SWIGART

Phoenix, Arizona

1    David McGlothlin of Hyde & Swigart is seeking compensation at an hourly

2   rate of $225 per hour, which is certainly reasonable based upon his experience and

3   the prevailing market rate in the community. *See* McGlothlin Declaration outlining

4   his experience. Mr. McGlothlin has previously settled cases paying a rate of $250

5   per hour for his services. *See* McGlothlin Decl., para. 30 and *Gelder* Decl., para. 5.

6   Moreover, Mr. McGlothlin is routinely retained to defend consumers on debt

7   defense cases and is compenated by his clients at a rate of $250 per hour. *See*

8   McGlothlin Decl., para. 31. Previously courts have approved a rate of $250 for

9   associates at Hyde & Swigart, and Mr. McGlothlin is the most senior associate with

10   his firm, regularly managing and advising all other associates and staff associated

11   with Hyde & Swigart. Id at 31, 16 & 17. Furthermore, during the litigation of this

12   matter, Mr. McGlothlin regularly consulted with the senior partners of the firm, and

13   had the benefit of their experience in bringing this matter to a successful

14   conclusion, without having Plaintiff incur attorneys fees at the higher rate charged

15   by the partners. *See* McGlothlin Decl., para 4.

16       **4.  The Hours Incurred in Litigating This Case Were Reasonable.**

17       Plaintiff's counsel expended over 42.3 hours in total working on behalf of

18   Plaintiffs, but have reduced the amount sought to be recovered to 35.2 hours.

19   Included in these hours, as set forth in the detailed billing records submitted with

20   this motion,[1] Plaintiff's counsel conducted the following tasks:

21       • Conducted the initial case review, reviewed the underlying Justice

22         Court case, and evaluated the present FDCPA case;

23       • Drafted the complaint;

24       • Drafted the joint discovery plan;

25       • Drafted and served discovery;

26       • Reviewed and accepted Defendant's Rule 68 offer;

27       • Conducted settlement negotiations;

28   [1]  See McGlothlin Decl.

- Drafted this motion for attorney's fees and costs.

The time billed reflects the time required to successfully prosecute this FDCPA action. As a result of this litigation, Plaintiffs received everything they were entitled to, including statutory damages, actual damages, and their attorney's fees and costs. Plaintiffs could not have been more successful.

**5.  The Award of Attorney's Fees Is Not Limited By the Amount of Damages.**

It has long been the law that any Plaintiff's attorney should not have his or her fees reduced based upon the amount of the recovery.  To do so would undermine the purpose of the fee-shifting statutes.   As long as the plaintiff is successful, i.e., recovers more than nominal damages, the plaintiff should be awarded attorney fees pursuant to a lodestar calculation. *Zagorski v. Midwest Billing Services, Inc.*, 128 F. 3d 1164, 1666 (7th Cir. 1997).

"In the absence of any indication that Congress intended to adopt a strict rule that attorney's fees under section 1988 be proportionate to damages recovered, we decline to adopt such a rule ourselves." *City of Riverside v. Rivera*, 477 U.S. 561, 581; 106 S. Ct. 2686, 2697; 91 L. Ed. 2d 466 (1986) (footnote omitted).  *See also Quaration v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999).  The benefits to the public as a whole resulting from lawsuits which encourage compliance with statutory provisions are more important than relatively small damage awards.  Indeed, when a provision for counsel fees is included in a regulatory act, it is a recognition that enforcement of the statute would be unlikely if an individual had to pay his or her own attorney's fees.   The Court quoted Senator Tunney's remarks from the Congressional Record stating that resources must be provided to these litigants or they will be effectively denied their rights:

> If the citizen does not have the resources, his day in court is denied him; the congressional policy which he seeks to assert and vindicate goes unvindicated; and the entire nation, not just

HYDE & SWIGART
Phoenix, Arizona

the individual citizen, suffers.

*City of Riverside v. Rivera*, *supra,* at 477 U.S. at 575, 106 S. Ct. at 2694 (citation omitted).  The Third Circuit amplified this thought, confirming the importance of making certain attorneys are paid at a sufficient rate to assure continued representation:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988).  "Congress has relied on such plaintiffs to act as private attorneys general." *Id.*, 842 F.2d at 1450 n.13.  *See also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991).

Furthermore, the amount of damages awarded need not bear any relation to the amount of attorney's fees granted.  "[A]ttorney's fees awarded by district courts have 'frequently outrun the economic benefits ultimately obtained by successful litigants.'" *Evans v. Jeff D.*, 475 U.S. 717, 735; 106 S. Ct. 1531, 1541; 89 L. Ed. 2d 747 (1986) (citation omitted).  Upon finding a statutory violation and damages, the attorney's fees award should be made in the lodestar amount. *Johnson v. Eaton*, 80 F.3d 148 (5th Cir. 1996).

Although the amount of reasonable attorneys' fees awarded pursuant to the FDCPA is left to the sound discretion of the judge, courts repeatedly recognize that attorneys' fees must be awarded in amounts to adequately compensate attorneys litigating these cases.  Just recently the Northern District of California awarded $98,924 in attorney's fees under in an FDCPA case that had $3,240.80 in damages. *Civitello v. First Credit of America, LLC.*, 2007 U.S. Dist. LEXIS 46620 (N.D. Cal. 2007).  In *Armstrong v. The Rose Law Firm, P.A.*, 2002 WL 31050583 (D.Minn.,

Sept. 5, 2002), the district court approved the award of $43,180 in attorney's fees where the plaintiff recovered $1,000 in statutory damages. The Southern District of Florida affirmed the bankruptcy court's award of attorney's fees of $29,037.50 where the plaintiff recovered FDCPA statutory damages of only $1,000. *In re Martinez*, 266 B.R. 523, 544 (Bankr. S.D.Fla. 2001), *aff'd* 271 B.R. 696 (S.D. Fla. 2001). In *Jones v. Robert Vest,* 2000 U.S. Dist. LEXIS 19026 (E.D. Va. Dec. 27, 2000), the Court awarded $17,766.49 in costs, litigation expenses and attorney's fees in a FDCPA case with $1,000.00 in statutory damages. In *Perez v. Perkiss*, 742 F. Supp. 883 (D. Del. 1990), the district court awarded $10,110 in attorney's fees where the plaintiff's recovery was only $1,200. The Seventh Circuit reversed a district court's denial of attorneys' fees even though the plaintiffs only recovered $100 ($50 each) as FDCPA statutory damages and remanded for determination of an award of attorneys' fees. *Zagorski v. Midwest Billing Services, Inc.*, *supra*, 128 F.3d at 1166, 1167. The courts recognize that the public as a whole has an interest in seeing FDCPA cases litigated:

> Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms and congress has determined that the public as a whole has an interest in the vindication of the statutory rights.

*Tolentino v. Friedman*, *supra,* 46 F.3d at 652, citing *City of Riverside v. Rivera*, 477 U.S. 561, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986).

"When a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee." *Hensley v. Eckerhart*, *supra,* 461 U.S. 424, 435. Here, Plaintiffs not only received the maximum amount of statutory damages they were entitled to, but also received an additional $1,002.00 in actual damages.

//

//

HYDE & SWIGART
Phoenix, Arizona

**6. Attorney's Fees are Appropriate for time Spent Drafting a Motion for Fees.**

Plaintiff spent 21.1 hours litigating the case through the date of receipt of Defendant's Rule 68 offer. Being unable to agree to an amount on fees, Plaintiff spent an additional 14.1 hours through the filing of Plaintiff's Motion for Attorney's Fees. Defendant may now argue that Plaintiff's counsel are not entitled to an award of fees for the time spent accepting the offer, negotiating an agreement on fees, or preparing this motion due to limiting language in Defendant's Rule 68 Offer. However, Plaintiffs having accepted judgment in their favor are now the prevailing party. As a prevailing Plaintiff, Plaintiffs are entitled to complete relief under 15 U.S.C. § 1692k(a)(3).

The Ninth Circuit allows the recovery of attorney's fees for time spent preparing and filing a motion for attorney's fees and costs. *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987); *Rosenfeld v. S. Pac. Co.*, 519 F.2d 527, 530 (9th Cir. 1975).

In *Camacho v. Bridgeport Financial Inc.*, 523 F.3d 973 (9th Cir. 2008) 2008 WL 1792808, *7, the Court stated, "In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee. Id. at 660; *Kinney v. Int'l Bhd. of Elec. Workers*, 939 F.2d 690, 695 (9th Cir. 1991). An award of fees is appropriate for the time expended in pursuing a Motion For Award Of Attorneys' Fees. *Jordan v. Multnomah County*, 815 F.2d 1258, 1264 (9th Cir. 1987).

//

//

HYDE & SWIGART
Phoenix, Arizona

**7.  Plaintiff's Attorneys Are Entitled to An Award of Costs and Litigation Expenses.**

Plaintiff has requested the award of costs and litigation expenses in addition to an award of attorneys' fees, pursuant to 15 U.S.C. § 1692k(a)(3).   Hyde & Swigart incurred $438.44 as costs and expenses of this litigation.

The District Court of Nevada held that "plaintiffs are also entitled to an award of costs representing out-of-pocket litigation expenses … includ[ing] costs incurred in travel (airfare, car rental, hotels and food, gasoline and the like), telephone, postage and photocopying."  *Ilick v. Miller*, 68 F. Supp. 2d 1169, 1181 (D. Nev. 1999).

Long distance telephone and faxing expenses, as well as copying and postage have been awarded as costs. *Sousa v. Miguel* 32 F.3d 1370, 1374 (9th Cir. 1994). Recoverable costs include travel, photocopies, lodging, postage, telephone calls, and computerized research.  *Libertad v. Sanchez*, 134 F.Supp.2d 218, 236 (D.P.R. 2001).   Costs may be recovered as provided for by statute as well as 28 U.S.C. §1920.  *See Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 794 (11th Cir. 1999).   Computer research costs are also recoverable.  *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 591-92 (D.R.I. 1983) ("LEXIS is an essential tool of a modern, efficient law office.  As such, it saves lawyers' time by increasing the efficacy of legal research.  Denial of reimbursement for LEXIS charges in a proper case would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with LEXIS.")  Plaintiff's costs sought to be recovered are for a filing fee, process of service fees, copies, postage, Lexis fees, and charges to PACER. Thus, Plaintiff's litigation expenses and costs are compensable.

//

//

//

HYDE & SWIGART
Phoenix, Arizona

# IV. CONCLUSION

As a result of Plaintiffs' successful action, Plaintiffs' counsel are entitled to reasonable attorneys' fees and costs, under the FDCPA and the acceptance of Defendant's Rule 68 Offer of Judgment. Plaintiff's counsel's hourly rates are reasonable in light of the prevailing market rate and the hours expended were reasonable, taking into account reasonable billing discretion.   Therefore, based on the forgoing, Plaintiffs' counsel request fees in the amount of $7,920.00 and costs in the amount of $438.44 for a total award  of **$8358.44.**

Date: August 4, 2009                              Hyde & Swigart

                                                  By:    /s/ David J. McGlothlin
                                                  David J. McGlothlin
                                                  Attorneys for the Plaintiff